**SKI WORLD, INC.,**
**Defendant-Appellant,**

v.

**Sarah Sue FIFE and Crystal Fife,**
**Plaintiffs-Appellees.**

**No. 1-985A237.**

Court of Appeals of Indiana,
First District.

Feb. 17, 1986.

against her employer, the trial court lacks subject matter jurisdiction to hear the case. Ski World concludes that the Industrial Board, pursuant to IND.CODE 22–3–1–1 et seq., has exclusive jurisdiction over such disputes.

We reverse.

## STATEMENT OF THE FACTS

Ski World operates a ski resort in southern Indiana. Crystal Fife (Crystal), employed in the resort's food service area, suffered a personal injury while "tubing" down a ski slope on Ski World's premises. The tubing activity took place while Crystal was attending an after-hours employees' party sponsored by Ski World. Crystal and her mother filed suit in Circuit Court seeking damages suffered as a result of both Crystal's personal injury and her mother's loss of services. Ski World filed motions pursuant to Ind. Rules of Procedure, Trial Rules 12(B)(1) and (6), contending a lack of subject matter jurisdiction. It asserted that under the Workmen's Compensation Act (Act), IND.CODE 22–3–1–1 et seq., exclusive jurisdiction over personal injury claims brought by an employee against his employer is vested with the Industrial Board (Board), the Act's administrative body. The trial court disagreed. It apparently held that although the dispute involves a personal injury claim by an employee against her employer, it has subject matter jurisdiction since the injury did not arise out of and in the course of Crystal's employment with Ski World.

T.H. St. Clair, John F. Schmitt, Lewis, Bowman, St. Clair & Wagner, Indianapolis, for defendant-appellant.

James T. Roberts, Nashville, for plaintiffs-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, Ski World, Inc. (Ski World), appeals an interlocutory order of the Bartholomew Circuit Court denying its Motion to Dismiss. The Motion contends that because the dispute at issue involves a personal injury claim by an employee

## ISSUE

Pursuant to Ind. Rules of Procedure, Appellate Rule 4(B)(6), Ski World, appealing the trial court's interlocutory order, presents the sole issue of whether the trial court properly exercised subject matter jurisdiction over Crystal's personal injury claim and over her mother's loss of services claim.

## DISCUSSION AND DECISION

Ski World first contends that Crystal's personal injury claim is within the exclu-

sive jurisdiction of the Board and may not fall within the trial court's jurisdiction until the Board has determined Crystal's injuries to be noncompensable under the Act. In effect, Ski World argues that the trial court went too far in its analysis in that it applied the subject matter jurisdictional test utilized prior to the Fourth District's recent decision in *Evans v. Yankeetown Dock Corporation* (1985), Ind.App., 481 N.E.2d 121 (Judge Conover concurring in result only).

The jurisdictional test utilized prior to *Evans*, though never specifically articulated, was alluded to in *Skinner v. Martin* (1983), Ind.App., 455 N.E.2d 1168, where we held that "to fall within the ambit of the Workmen's Compensation Act (Act) the accident must arise out of and in the course of the employment." From that case emerges the following test:

> In order for the Industrial Board to obtain jurisdiction over a dispute, the following must be established:
>
> (1) The dispute must involve a claim by an employee against his employer;
> (2) The claim must be for damages arising from an accidental physical injury or death to the employee; and
> (3) The accident must have arisen out of and in the course of the employee's employment with the employer.

Thus the "pre-*Evans* test" requires the establishment of all three of the above elements before the Board may exercise jurisdiction over the dispute. If any one of the elements is missing, then the claim is merely a common civil action over which trial courts have exclusive jurisdiction. Ski World urges us to abandon this test and adopt that which the majority of the Fourth District set out in *Evans*.

The *Evans* jurisdictional test has only two requirements: (1) that the dispute involve a claim by an employee against his employer, and (2) that the claim be for damages resulting from accidental personal injury or death. The additional requirement found in the pre-*Evans* test, that the injury or death emanate from an accident arising out of and in the course of the claimants' employment, is not treated as a jurisdictional element in the *Evans* analysis. Instead it is viewed as the factor determining the compensability of the injury or death.

 Proper statutory construction requires that each section of a statute be considered with reference to the other sections. *Barr v. State* (1980), Ind.App., 400 N.E.2d 1149, *trans. denied; see also* 26 I.L.E. Statutes Sec. 122 (1960). Taken together the pertinent sections of IND.CODE 22-3 (*see* IND.CODE 22-3-1-3, 22-3-2-2, 22-3-2-6 and 22-3-6-1(e)) clearly indicate that establishing an injury or death as arising out of and in the course of employment is a condition precedent to Board consideration of a claim, and therefore is a jurisdictional element. As a result, we stand by our pre-*Evans*, three prong jurisdictional test.[1]

Ski World, asserting lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, filed a Motion to Dismiss under Ind. Rules of Procedure, Trial Rules 12(B)(1) and (6). The trial court, apparently under the impression that, pursuant to T.R. 12(B), the Motion to Dismiss had been converted into a motion for summary judgment, held a summary judgment hearing. It appears that the hearing should have been treated as one for dismissal rather than one for summary judgment despite the fact that matters outside the pleadings were submitted and considered. *See* 1 W. HARVEY, INDIANA PRACTICE p. 19 (Supp.1984). However, since neither party addressed the issue, we will proceed directly to the merits.

---

1. Having determined the proper jurisdictional analysis to be followed, we note that litigation over the jurisdictional issue may be initiated either before the Board or in trial court since both the Board and the trial courts have the authority, subject to review, to determine their respective jurisdictions. Should the authority before which the claimant initially filed his claim, i.e. the trial court or the Board, decline jurisdiction, then the claim can be filed in the alternative forum.

In denying Ski World's Motion to Dismiss, the trial court apparently found that Ski World failed to establish that Crystal's injury arose out of and in the course of employment. We disagree.

■ For an injury or death to arise out of and in the course of employment it must occur within the period of employment, at a place or area where the employee may reasonably be and while the employee is engaged in an activity at least incidental to his employment. *Wayne Adams Buick, Inc. v. Ference* (1981), Ind.App., 421 N.E.2d 733, *trans. denied; Wagner v. Buescher Bank Instrument Co.* (1954), 125 Ind.App. 103, 122 N.E.2d 618; *Lasear, Inc. v. Anderson* (1934), 99 Ind.App. 428, 192 N.E. 762. An employee's activity will be considered incidental to his employment if the activity advances, directly or indirectly, his employer's interests. *See Lona v. Sosa* (1981), Ind.App., 420 N.E.2d 890, *trans. denied.*

Courts in many jurisdictions, including our own, have struggled with the question of whether injuries received at employer sponsored recreational activities arise out of and in the course of employment. Until 1957, case law in this state answered that question negatively. *See Tom Joyce 7–Up Co. v. Layman* (1942), 112 Ind.App. 369, 44 N.E.2d 998 (where the court held that an employee's participation on a bowling team bearing the logo of the soft drink bottled by his employer was not incidental to his employment); *Mishawaka Rubber and Woolen Manufacturing Co. v. Walker* (1949), 119 Ind.App. 309, 84 N.E.2d 897, *trans. denied* (where the court held that the drowning death of an employee occurring during his lunch hour while fishing on the employer's property did not arise out of and in the course of his employment); and *Wagner, supra,* (where the court held that an employee's injury incurred during a "company picnic" did not arise out of and in the course of employment despite the fact that: (1) the "recreation association," the group that "sponsored" the picnic, was financially supported to a significant extent by the employer; (2) that the employer controlled the "association" to the extent that all employees, whether or not paying members of the association, could attend the picnic; and (3) that the employer openly promoted the event). Then in *Noble v. Zimmerman* (1957), 237 Ind. 556, 146 N.E.2d 828, our supreme court joined the then developing modern trend. Although labeling the earlier appeals court cases "distinguishable," *Noble* clearly overturned those decisions.

In *Noble*, the owners of a car dealership decided to hold a regularly scheduled management meeting at their summer cottage on Lake Freeman. Attendance was obligatory. The change in location from a downtown motel to the cottage was made to accomodate the attendants. The plans for the meeting included a meal, and swimming and boating. The attending employees were encouraged to bring their spouses or significant others. After the meeting itself concluded, several of the attendants, including one of the owners, went down to the boathouse at lakeside. The owner had recently installed a new propeller on his rented cabin cruiser. He expressed concern as to whether he had installed it properly. The decedent offered to enter the water to inspect the propeller. The owner acquiesced. After donning his swimsuit, the decedent dove into the water in such a manner so as to fracture a cervical vertebra. He subsequently died from his injury. The Industrial Board awarded compensation and the court of appeals reversed. *See Noble v. Zimmerman* (1956), Ind.App., 147 N.E.2d 233.[2]

Although the court suggested that *Noble* is distinguishable from the earlier cases in that in those cases the employee's attendance or participation was not obligatory or expected, the court's emphasis was not on that issue, but rather on the nexus or the flow between work and after hours recreation.

The general rule regarding an employer's liability for injuries incurred during

2. For reasons unknown, the case was never re- ported in the Indiana Appellate Court Reports.

employment related recreational activities was quoted in *Noble:*

> " 'Generally, injuries suffered by an employee while watching, participating in, or going to or coming from recreational activities sponsored in whole or in part by the employer, are not compensable, since such injuries are usually sustained while the employee is not performing any duty for which he has been either expressly or impliedly employed. In other words the injury cannot ordinarily be said to have resulted from an accident arising out of and in the course of the employment.
>
> A distinction is made, however, in those cases where the recreation which caused the injury, either directly or indirectly, was sponsored by the employer as a matter of business and not because of altruistic motives. That is, the employer exercised control or domination over the recreation for the purpose of developing better service and greater efficiency among the employees, thereby reaping a direct business benefit from the recreations sponsored.' "

Schneider's Workmen's Compensation Law, Vol. 6, ch. 25, p. 519.

As indicated in *Noble*, the distinction between business and recreational activities may become blurred:

> "[I]n recent years it has become increasingly evident that employers are more and more utilizing recreational programs for their employees, and properly so, in aiding and promoting better business relations with persons in their employ, calculating the same to benefit the employers' best business interests."

*Id.* at 569–570. Recognizing this development, the court used rather broad language in holding that the activity resulting in the decedent's death, i.e. diving into the water, was incidental to his employment. Noting from the Record that the only reason the meeting was held at the lakeside cottage was "because of the heat in town it would be pleasanter [sic] to hold the meeting at Lake Freeman," the court rhetorically asked:

> "How could it be made to appear more clearly that the employers' sponsored recreation at the latter's lakeside premises was the inducement for a better or more successful business meeting, admittedly held to improve sales and service of employers' business, and *necessarily intended to aid the employers' business so as to be incidental to the employment?*" (Our emphasis.)

Enhancing the breadth and significance of the *Noble* decision is the court's citation, with approval, to cases holding likewise in other jurisdictions.

In *Jewel Tea Co. v. Industrial Commission* (1955), 6 Ill.2d 304, 128 N.E.2d 699, an employee of Jewel was injured while playing in a company sponsored softball league. The league was comprised of 15 teams, all manned by Jewel employees. Participation was voluntary and no compensation was given, save that the divisional and league champions received trophies provided by Jewel. The teams were named in part after the team members' respective district manager. The league's activities were regularly reported in the company's employee newsletter and Jewel sponsored an annual dinner on its premises to start off each season of play. Jewel provided most of the equipment while the players were responsible for their own uniforms. The games were almost exclusively played upon premises other than Jewel's. The injury at issue occurred while the employee's team was playing upon a public playground. Admittedly, the games were organized by Jewel to maintain "a good state of welfare," *id.*, 128 N.E.2d at 701, and to promote cooperation and joint effort among employees. In upholding the Industrial Board's award on the basis that the injury arose from an activity incidental to employment, the Illinois Supreme Court stated:

> "While this recreational activity was not a measurable bonus to the employees, it was a more subtle advantage of employment in that it offered employees an opportunity of socializing both with each other and with the district manager and other executives through participation in

this sport. The consequent improvement of employee-employer relations through this activity was a significant if not tangible benefit to the employer."

*Id.* at 705.

In *O'Leary v. Brown-Pacific-Maxon, Inc.* (1951), 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483, an employee of Brown-Pacific-Maxon, Inc. drowned while attempting to swim a channel in an effort to lend assistance to two troubled swimmers. The channel had dangerous currents and swimming therein was prohibited. Just prior to the accident the employee was waiting on the employer's property for employer provided transportation. He had just exited a recreational facility provided by the employer. In reinstating a compensation award resulting from a claim under the Longshoremen's and Harbor Worker's Compensation Act, the U.S. Supreme Court held that the employees use of the recreational facility was incidental to his employment. His death therefore arose out of and in the course of his employment even though the accident occurred in an attempt to rescue persons outside the company's employ and undertaken in forbidden waters off the employer's premises. The court cautioned against an overly restrictive interpretation of the Act, noting that "[w]orkmen's compensation is not confined by common law conceptions of employment." *Id.* at 506, 71 S.Ct. at 471.

*Fagen v. Albany Evening Union Co.* (1941), 261 App. 861, 24 N.Y.S.2d 779, involved a situation very similar to that presented in the instant case. In *Fagen*, the decedent, a 12 year old paper boy, drowned in a swimming mishap while attending a "paper boy picnic" sponsored by his employer. The food and accompanying activities were provided by the employer. The company also provided transportation to the recreational facility, which it did not own. Finding that participation in the swimming activity was incidental to his employment, the court stated:

"It is obvious that the picnic was one of the activities maintained by the employer for the purpose of developing better service and greater interest on the part of the newspaper carriers and for its own benefit."

*Id.*, 24 N.Y.S.2d at 780.

■ Given *Noble* and the authorities cited therein, it is clear that Crystal's injury arose out of and in the course of her employment with Ski World. Ski World employed Crystal in its food service area in the ski lodge. Crystal suffered personal injury while participating in a planned recreational event at an after hours Ski World sponsored employees' party. Ski World owned and controlled the premises upon which the employees' party was held. Ski World encouraged and therefore presumably expected its employees to attend the party. Ski World provided the food, the refreshments, the entertainment and the recreational equipment. Finally, and most significantly, Ski World believed that holding such an event would be in its best business interests. Uncontradicted testimony reveals that Ski World had two distinct purposes for holding the party: (1) to boost employee moral in anticipation of increasing enthusiasm in the workplace, thereby increasing efficiency and productivity; and (2) to allow employees in one area of the resort's operations to observe the entire operation, thus familiarizing each employee with other jobs being performed, in an attempt to increase the flexibility of its workforce. Here, just as in *Noble*, there is a clear nexus between work activities and after hours recreational activities—the one flowed directly from the other.

It having been stipulated that Crystal was an employee at the time of the accident and that her claim is against Ski World for personal injury damages arising from an accidental injury, and it being clearly established that Crystal's personal injury arose out of and in the course of her employment with Ski World, the Board, pursuant to IND.CODE 22–3–1–1 et seq., has exclusive jurisdiction over both Crystal's and her mother's claim. *See also McDonald v. Miner* (1941), 218 Ind. 373, 32 N.E.2d 885. The trial court was therefore

obligated to grant Ski World's T.R. 12(B)(1) Motion to Dismiss.

For the reasons above, the order denying defendant's Motion to Dismiss is reversed.

Judgment reversed.

ROBERTSON, P.J., and RATLIFF, J., concur.