James **WELDY**, Appellant–Defendant,

v.

Mary Elizabeth **KLINE**, Personal Representative of the Estate of George E. Kline, Deceased, Appellee–Plaintiff.

No. 50A03–9211–CV–368.

Court of Appeals of Indiana, Third District.

June 28, 1993.

Rehearing Denied Sept. 30, 1993.

Robert D. Lee, William T. Webb, Hardig, Lee & Groves, South Bend, for appellant-defendant.

Charles Gregory Read, Ronald L. Davis, Vissing, Read, Davis, Byrne, Mosley & Miller, Jeffersonville, for appellee-plaintiff.

GARRARD, Judge.

This is an interlocutory appeal from the denial of a Trial Rule 12(B)(1) motion to dismiss for lack of subject matter jurisdiction, or in the alternative, a motion for summary judgment.

The facts in this case reveal that on August 27, 1989, M.P.I., Inc. (MPI) held a party for employees who worked at its Goshen, Indiana, Holiday Inn. Defendant James E. Weldy (Weldy) and decedent George E. Kline (Kline) were both employed by MPI at the time of the party and worked together in the kitchen at the Holiday Inn. MPI sponsored the party for those who worked at the Inn in order to improve employee morale, generate good will among the employees, and otherwise benefit Holiday Inn. The party included a cook-out and some planned activities, including a tug-of-war game which took place over the swimming pool. MPI also supplied food, drink, and a keg of beer.

During the course of the party many of the party-goers were caught and thrown into the pool. At one point in the evening Weldy and a non-employee guest, Charles Myers, pursued Kline with the intent of throwing him into the pool. Their first attempt was unsuccessful. Soon after, however, Weldy and Myers apprehended Kline who, after removing his shoes and watch, allowed himself to be thrown into the pool. After Kline was thrown in, Weldy and Myers were also helped into the pool by two other party-goers. Weldy and Myers immediately got out of the pool in pursuit of those who had pushed them in. Kline, however, did not get out. His body was found a little less than an hour later on the bottom of the pool. He had drowned.

Kline's estate subsequently filed suit against several parties, including Weldy, for wrongful death. On April 13, 1991, Weldy filed a motion to dismiss for lack of subject matter jurisdiction or, in the alternative, a motion for summary judgment. The trial court treated this motion as a summary judgment and denied it on June 24, 1992. On October 8, 1992 a similar motion was also denied. This interlocutory appeal was certified on October 27, 1992.

Weldy presents several issues for appeal. Only one issue, however, need be addressed:

Whether the trial court lacked subject matter jurisdiction to hear Kline's claim for wrongful death against Weldy.

Subject matter jurisdiction is the power of a court to hear and determine the case before it. *Harp v. Indiana Dept. of Highways* (1992), Ind.App., 585 N.E.2d 652, 656. At its essence it is a question of whether a trial court has constitutional or statutory authority to hear and decide a claim. *Id.*

Weldy filed a TR 12(B)(1) motion to dismiss for lack of subject matter jurisdiction, or in the alternative, a motion for summary judgment on two separate occasions before the trial court. The court below treated each of these as motions for summary judgment and denied both. We do not agree, however, that TR 12(B)(1) motions to dismiss and TR 56 motions for

summary judgment are interchangeable.[1] Generally, those motions listed under TR 12(B)(1)–(5) and (7) do not address the merits of the case and, therefore, do not result in judgments or orders on the merits and will not bar the subsequent presentation of the claim. *Mid–States Aircraft Engines v. Mize Co.* (1984), Ind.App., 467 N.E.2d 1242, 1246–47; Harvey 1 *Indiana Practice* 598 (1987). These are viewed as matters in abatement rather than matters in bar of a claim. *See Mid–States Aircraft, supra* at 1246–47. TR 56 motions for summary judgment, on the other hand, can address only matters on the merits and a judgment rendered thereunder is one in bar. *Id.* Thus, while it may be reasonable to integrate the TR 12(B)(6) motion for failure to state a claim with the TR 56 motion for summary judgment, *see* TR 12(B)(8), it is not reasonable to integrate the other TR 12(B) defenses in a similar fashion. *Id.* As a result, even if a TR 12(B)(1) motion is accompanied by supplemental data, information, or discovery material, it will not convert into a motion for summary judgment.

In light of the jurisdictional nature of the claim before us we find that it was error for the trial court to treat this motion as one for summary judgment. The issue of subject matter jurisdiction was clearly presented to the trial court and is the sole issue argued on appeal. Pursuant to TR 61 we therefore proceed to its determination.

In assessing its jurisdiction a court may need to examine the specific jurisdictional grant of authority in order to determine whether the requirements have been met. *Squarcy v. Van Horne* (1975), 163 Ind. App. 64, 321 N.E.2d 858. This may entail the need to examine each element and make a determination on whether a party's claim falls within the grant. Such is the case here where the Workmen's Compensation Act provides the relevant authority.

In the context of workmen's compensation, a civil court lacks subject matter jurisdiction where a claimant's action falls within the Act's exclusivity provision. *See Wolf Corp. v. Thompson* (1993), Ind.App., 609 N.E.2d 1170, 1171. IC 22–3–2–6 states:

EXCLUSIVE REMEDIES

The rights and remedies granted to an employee subject to IC 22–3–2 through IC 22–3–6 on account of personal injury or death by accident *shall exclude all other rights and remedies of such employee,* the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 12–18–6. (emphasis added).

In addition, IC 22–3–2–13 provides:

Whenever an injury or death, for which compensation is payable under chapters 2 through 6 of the article shall have been sustained under circumstances creating in *some other person than the employer and not in the same employ* a legal liability to pay damages in respect thereto, the injured employee, or his dependents, in the case of death, may commence legal proceedings against the other person to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation under chapters 2 through 6 of this article. (emphasis added).

IC 22–3–2–13 is an exception to the general rule limiting an employee's recovery for job-related accidental injuries to the provisions of the Act. *See Skinner v. Martin* (1983), Ind.App., 455 N.E.2d 1168, 1171. IC 22–3–2–13 allows the possibility of bringing suit against third parties but limits this exception to suits against individuals other than the employer or fellow employees. *Id.* The language "not in the same employ" specifically preserves a co-employee's immunity from common law liability for

---

**1.** Weldy may have been mistaken about when a TR 12(B) motion may be converted into a motion for summary judgment. In general, only motions under TR 12(B)(8) can be treated as TR 56 motions for summary judgment, and then only when the claim is asserted as a TR 12(B)(6) motion to dismiss for failure to state a claim and where matters outside the pleading are presented to and not excluded by the court. *Mid–States Aircraft Engines v. Mize Co.* (1984), Ind. App., 467 N.E.2d 1242, 1246.

accidents found to have arisen out of and in the course of employment. *Id.; Tarr v. Jablonski* (1991), Ind.App., 569 N.E.2d 378, 379, *trans. denied.*

Several recent cases have, however, carved out an exception to this exception, holding that where a co-employee, normally covered under this exception, engages in horseplay or various other non job-related activities, he forfeits his immunity under IC 22-3-2-6. *See e.g. Fields v. Cummins Emp. Fed. Credit Union* (1989), Ind.App., 540 N.E.2d 631, 635, 637–38; *Seiler v. Grow* (1987), Ind.App., 507 N.E.2d 628, 630–31, *trans. denied; Martin v. Powell* (1985), Ind.App., 477 N.E.2d 943, 945, *trans. dismissed.* This conclusion is reached by interpreting the phrase "in the same employ" to mean an *activity "in the course of employment." See Fields, supra* 540 N.E.2d at 637; *Seiler, supra* 507 N.E.2d at 631; *Martin, supra* 477 N.E.2d at 945. Such activities as pulling chairs from under fellow employees and classic sexual harassment are not, under this analysis, "in the course of employment" and therefore are not "in the same employ" for the purposes of immunity under the Act. *See Fields, supra* 540 N.E.2d at 637–38; *Martin, supra* 477 N.E.2d at 944–45.

This interpretation causes us several problems. First, the requirement that the injury be sustained "in the course of employment" refers specifically to the status of the *injured employee.*[2] The Act does not scrutinize the actions of the employer or the co-employee with regard to whether an injury occurred in the course of employment. For us to do so is to create a category of persons subject to liability unaddressed by the statute. Second, these two requirements, "in the same employ" and "in the course of employment," are separate and distinct requirements. They do not mean the same thing. For example, this court has acknowledged on previous occasions that the Act does provide that a claimant may rightfully proceed against a third party tort-feasor not in the same employ, but we have specifically stated that a *co-employee* is *removed* from liability for accidents *found to have arisen out of and in the course of employment. Ward v. Tillman* (1979), 179 Ind.App. 626, 386 N.E.2d 1003, 1005 [3]; *see also Skinner, supra* 455 N.E.2d at 1171; *O'Dell v. State Farm Mut. Auto. Ins. Co.* (1977), 173 Ind. App. 106, 362 N.E.2d 862, 866. Thirdly, the interpretation contravenes the clear purposes behind the Act. Generally, workmen's compensation is intended to afford employees an adequate and certain remedy independent of any finding of negligence for accidents arising out of and in the course of employment. *O'Dell, supra* 362 N.E.2d at 864. This method of compensation, based upon a reallocation of risks, arose from a need to curb the harsh results rendered under the common law with its defenses of contributory negligence, assumption of the risk, and the fellow servant rule. *Id.* A consistent extension of this policy of certain compensation was the provision for the exclusiveness of the remedy. *Id.; see also* 82 Am.Jur.2d *Worker's Compensation* § 5. The court in *O'Dell* noted that this policy confined an injured employee's rights to those available under workmen's compensation if the accident, involving the deceased and his co-employee,

---

**2.** See, for example, the so called "horseplay" cases. As long as the injured employee is an "innocent victim" of horseplay, the courts have held that such injuries are caused by employment or arise out of employment. *See e.g. Pepka Spring Co., Inc. v. Jones* (1978), 175 Ind.App. 285, 371 N.E.2d 389, 391, *trans. denied; Woodlawn Cemetery Association v. Graham* (1971), 149 Ind.App. 431, 273 N.E.2d 546, 549; *Block v. Fruehauf Trailer Division Fruehauf Corp.* (1969), 146 Ind.App. 70, 252 N.E.2d 612, 615. There is no attention paid to the co-employee pranksters in assessing what it means to arise out of or be in the course of employment. While we acknowledge that these cases do not deal with the Act's exclusivity provision, and therefore do not purport to speak on the question of whether a co-employee can be liable, it does demonstrate the focus of the Act and the "course of employment" requirement.

**3.** We note with puzzlement that *Ward, supra,* was cited by the court in *Martin, supra,* in support of its definition of "in the same employ," stating that "a defendant is entitled to the immunity provided by Ind.Code § 22-3-2-13 only when he is acting in the course of his employment at the time the plaintiff suffers his compensable injuries." *Martin, supra* 477 N.E.2d at 945.

arose out of and in the course of their mutual employment. *O'Dell, supra,* at 864. That holding is consistent with several sections of the Act, and the cases construing them, that evince a strong policy against double recovery. *Freel v. Foster Forbes Glass Co.* (1983), Ind.App., 449 N.E.2d 1148, 1151.[4]

For these reasons we decline to follow those cases which expose a co-employee to liability based upon the non job-related nature of his actions. The Act is concerned with only the *injured employee* and the circumstances surrounding his or her injury. To the extent that the Act does not provide adequate compensation for such injury or death, thereby encouraging injured employees or their representatives to seek other avenues of redress, the legislature should recognize its responsibility to adjust awards to a reasonable level. We are not the appropriate body to make such determinations.

■ The next question then becomes what does "in the same employ" mean in this context. The test, according to the court in *Ward, supra,* to determine whether Kline and Weldy were "in the same employ" is whether or not the denominated defendant, Weldy, could obtain compensa-

tion benefits under the same or similar circumstances. *Ward, supra* at 1005.[5] The facts in this case reveal that Kline and Weldy both worked in the kitchen at the Holiday Inn and both attended the party given by their mutual employer. As employees they were identically situated. Should the positions have been reversed, Weldy would have been able to obtain compensation benefits to the same extent as Kline. We can think of no clearer case of someone "in the same employ."

[8–11] That hurdle passed, we proceed to evaluate whether three additional statutory jurisdictional requirements are met. IC 22–3–2–6 limits the rights and remedies of an employee seeking a compensatory remedy for personal injuries to the exclusive provisions of the Act where these three requirements are met:

(1) personal injury or death by accident;

(2) personal injury or death arising out of employment;

(3) personal injury or death arising in the course of employment.

*Gordon v. Chrysler Motor Corp.* (1992), Ind.App., 585 N.E.2d 1362, 1363, *trans. denied; see also Ski World, Inc. v. Fife* (1986), Ind.App., 489 N.E.2d 72, 74.[6] An

---

4. The dual-capacity cases also evince a strong policy against treating the exclusivity provision in the Act too cavalierly. The dual capacity theory, which would allow an employee to sue his employer—not in his capacity as employer, which is forbidden by the Act—but in his capacity as, for example, manufacturer of a defective product. *See Needham v. Fred's Frozen Foods, Inc.* (1977), 171 Ind.App. 671, 359 N.E.2d 544. This theory has repeatedly been rejected in Indiana "due to the clear and unambiguous language of the Indiana Workmen's Compensation Act's exclusive remedies provision." *Indiana State Highway Dept. v. Robertson* (1985), Ind. App., 482 N.E.2d 495, 499.

5. We note that the court in *Thiellen v. Graves* (1988), Ind.App., 530 N.E.2d 765, 767–68, added an additional requirement to the interpretation of this phrase. The court held that "the legislative intent in that phrase is to require some nexus between the employment of the third party and the injury rather than merely the third party's status as sharing a common employer with the injured employee." The court construed *Martin, supra,* as consistent with this construction and specifically disapproved of the language that we cite from *O'Dell* as overly broad. The court nevertheless held that the employees in that case were in the same employ

because the co-employee was acting in the course of her employment when her actions caused the injury to her fellow employee. *Id.,* 530 N.E.2d at 768. As we noted earlier, we disagree with this exception to immunity for co-employees and decline to follow such cases. This nexus requirement is a good one, but unnecessarily repetitive. The cases interpreting the Act already provide for such a requirement, see this opinion infra, and to add it again here would serve no purpose except to create a new category of persons liable to suit outside the protections of the exclusivity provision of the Act.

6. In *Ski World,* the court affirmed a three prong test similar to the test in *Gordon:*

In order for the Industrial Board to obtain jurisdiction over a dispute, the following must be established:

(1) The dispute must involve a claim by an employee against his employer;

(2) The claim must be for damages arising from an accidental physical injury or death to the employee, and

(3) The accident must have arisen out of and in the course of the employee's employment with the employer.

*Ski World, supra,* 489 N.E.2d at 74.

injury arises "out of employment" when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. *Id.* 585 N.E.2d at 1365. This causal relationship is established when a reasonably prudent person considers a risk to be incidental to the employment at the time of entering into it or when the facts indicate a connection between the conditions under which the employee works and the injury. *Id.* An injury arising "in the course of employment" refers to the time, place, and circumstances surrounding that injury. *Id.*

In addition, for an injury to arise out of and in the course of employment it must occur within the period of employment, at a place or area where the employee may reasonably be, and while the employee is engaged in an activity at least incidental to his employment. *Ski World, supra* 489 N.E.2d at 74. An employee's activity will be considered incidental to his employment if the activity advances, directly or indirectly, his employer's interests. *Id.*

The question in this case revolves around whether injuries received at employer sponsored recreational activities arise out of and in the course of employment. Our supreme court in *Noble v. Zimmerman* (1957), 237 Ind. 556, 146 N.E.2d 828, stated the general rule as follows:

Generally, injuries suffered by an employee while watching, participating in, or going to or coming from recreational activities sponsored in whole or in part by the employer, are not compensable, since such injuries are usually sustained while the employee is not performing any duty for which he has been either expressly or impliedly employed. In other words the injury cannot ordinarily be said to have resulted from an accident arising out of and in the course of employment.

A distinction is made, however, in those cases where the recreation which caused the injury, either directly or indirectly, was sponsored by the employer as a matter of business and not because of al-

truistic motives. That is, the employer exercised control or dominion over the recreation for the purpose of developing better service and greater efficiency among the employees, thereby reaping a direct business benefit from the recreation sponsored.

*Id.* at 831–32 (quoting Schneider's Workmen's Compensation Law, Vol. 6, ch. 25, p. 519).

As indicated in *Noble*, the distinction between business and recreational activities may become blurred:

[I]n recent years it has become increasingly evident that employers are more and more utilizing recreational programs for their employees, and properly so, in aiding and promoting better business relations with those in their employ, calculating the same to benefit the employer's best business interests.

*Id.* at 834. The court then used rather broad language in holding that the activity resulting in the employee's death, diving into the water after attending a business meeting held at a summer cottage on Lake Freeman, was incidental to his employment. *Id.* at 835. The Court stated that "the employer's sponsored recreation at the latter's lakeside premises was the inducement for a better or more successful business meeting, admittedly held to improve sales and service of employer's business, and necessarily intended to aid the employer's business so as to be incidental to the employment." *Id.* at 835.

For added support, the court in *Noble* cited several cases from other jurisdictions. For example, in *Jewel Tea Co. v. Industrial Commission* (1955), 6 Ill.2d 304, 128 N.E.2d 699, 705, an employee was injured while playing in a company sponsored softball league where participation was voluntary, at no compensation, and took place on public playgrounds. The consequent improvement of employer-employee relations through this activity was a significant if not tangible benefit to the employer and hence an activity incidental to employment. Also in *Fagen v. Albany Evening Union*

*Co.* (1941), 261 A.D. 861, 24 N.Y.S.2d 779, 780, a 12 year old paperboy drowned in a swimming mishap while attending a "paper boy picnic" sponsored by his employer. It was obvious to the court that the picnic was one of the activities maintained by the employer for the purpose of developing better service and greater interest on the part of the newspaper carriers and for its own benefit and, therefore, was incidental to his employment. *Id.*

More recently, this court affirmed this interpretation in *Ski World, supra.* In that case the plaintiff was employed in the food service area of the ski lodge. *Id.* at 77. She suffered personal injury while tubing down a ski slope on Ski World's premises during an after hours party sponsored by Ski World. *Id.* at 73, 77. Ski World encouraged its employees to attend, provided the food, refreshments, and entertainment, and believed that in doing so its best business interests would be benefitted. *Id.* at 77. The court held that in these circumstances there was a clear nexus between the work activities and the after hours recreational activities—the one flowed directly from the other—and, therefore, the plaintiff's injury arose out of and in the course of her employment with Ski World. *Id.*

Given the authority cited above, it is clear that Kline's accidental death arose out of and in the course of his employment. The party attended by Kline was an after hours party thrown by his employer. Attendance was voluntary, but encouraged, and the food, activities, and location were provided by MPI. In addition, Kline's manager at the Holiday Inn stated that the purpose of the party was to generate good will among the employees and to otherwise benefit Holiday Inn. Just as in the cases cited above, these circumstances demonstrate a clear nexus between the work activities and the recreational activities that caused his death. We therefore find that

Kline's death arose out of and in the course of his employment for the purposes of the exclusivity provision of the Act.

▪ Finally, Kline argues that Weldy is not immune from liability under the Act because he was engaged in horseplay at the time he threw Kline into the pool. The question revolves around when certain acts of horseplay will be considered to have arisen out of and in the course of employment. In general, our courts have held that where horseplay is a common occurrence and the employer, with knowledge of the facts, permits the practice to continue, he has acquiesced in the horseplay and it becomes a condition of employment. *Chicago, I. & L. Ry. Co. v. Clendennin* (1924), 81 Ind.App. 323, 143 N.E. 303, 304; *In re Loper* (1917), 64 Ind.App. 571, 116 N.E. 324, 326–27. This satisfies the causal nexus between the injury and the performance of some service of the employment by demonstrating that the accident arose out of a risk which a reasonable person might have comprehended as incidental to the employment at the time of entering into it. *Clendennin, supra,* 143 N.E. at 304.[7] This nexus will be broken, however, where it is found that the injured employee actively participated in the horseplay. As this court stated in *Block v. Fruehauf Trailer Division Fruehauf Corp.* (1969), 146 Ind. App. 70, 252 N.E.2d 612, 615:

> Once the connection between the employment and the "horseplay" conduct becomes so tenuous that there is no apparent causal factor, to permit compensation would be to disregard even the most liberal boundaries of the limitation, "arising out of and in the course of the employment."

This is why our courts have consistently held that before an injury will be considered to have been caused by employment, the injured employee must have been an innocent victim of the horseplay. *Pepka*

---

7. The court in *Clendennin, supra* 143 N.E. at 304, stated that:

> It is a matter of common knowledge to employers of labor that men working together, or in near proximity to other workers, will indulge in moments of diversion from work to play pranks on each other ... the risk from accident is thereby, to some extent at least,

necessarily increased, and this increased risk is a risk of the employment.

We note that where an employer takes steps to prevent such activity, he may be deemed not to have acquiesced in such horseplay. *See Block, supra* 252 N.E.2d at 615; *Western Union Telegraph Co. v. Owens* (1925), 82 Ind.App. 474, 146 N.E. 427, 429.

*Spring Co., Inc. v. Jones* (1978), 175 Ind. App. 285, 371 N.E.2d 389, 391, *trans. denied; Woodlawn Cemetery Association v. Graham* (1971), 149 Ind.App. 431, 273 N.E.2d 546, 549; *Block v. Fruehauf Trailer Division Fruehauf Corp.* (1969), 146 Ind.App. 70, 252 N.E.2d 612, 615. Active participation is effectively an intervening cause. We have consistently denied compensation to an injured employee who so participates. *Pepka Spring, supra* 371 N.E.2d at 391.[8]

It is important, therefore, in determining whether there is subject matter jurisdiction in this case, to know whether Kline actively participated in the horseplay or was merely an innocent victim of another's prank. If he was an innocent victim, the injury arose out of and in the course of employment and jurisdiction must be denied under the exclusivity provision of the Act. If not, if Kline was actively participating in the horseplay, even if his employer acquiesced in it, the injury was not within his employment and the provisions of the Act do not apply. Kline would therefore be free to pursue his action for wrongful death and jurisdiction would vest in the trial court to hear his claim.

Because we do not have before us a factual determination on this question, we remand and ask the trial court to make a factual finding on whether Kline was actively engaged in horseplay at the time of the accident that resulted in his death. If so, jurisdiction is conferred and Kline may proceed with his case. If not, the trial court is ordered to dismiss this action for lack of subject matter jurisdiction.

HOFFMAN and BAKER, JJ., concur.

---

**8.** In *Pepka Spring, supra* 371 N.E.2d at 390–91, for example, the injured employee participated in some spring throwing on the job. Afterward he left his work station to get a drink of water. He then returned to his work and began to focus on his duties. It was then that a co-employee threw a spring and injured him. The court held that the injured employee had withdrawn from any aggression or participation in the horseplay and was therefore an innocent victim.

On the other hand the injured employee in *Block, supra* 252 N.E.2d at 614–15, was considered to have actively participated in horseplay where he gave chase to another employee, who had loosed his apron strings causing it to fall. While in pursuit of the prankster he fell and struck his neck on a door causing injuries.