## U. S. FIBER GLASS INDUSTRIES *v.* ULAND.

[No. 20,304. Filed May 3, 1965. Rehearing denied June 7, 1965.]

*Bamberger, Foreman, Oswald and Hahn,* of Evansville, for appellant.

*Herbert F. Naville,* of New Albany, for appellee.

HUNTER, J.—This is an appeal from an award of

maximum compensation entered by the full Industrial Board for the benefit of Ann S. Uland, widow, and six (6) minor dependent children of the decedent, John Uland together with burial benefits.

A condensed recital of the undisputed evidence reveals the following facts: John Uland was general manager of the U. S. Fiber Glass Industries, the appellant corporation; Edward J. Doyle was the sales representative of Royal, Incorporated, Midwest, which company was a distributor or supplier of plastic raw materials used in the fiber glass industry; Edward J. Doyle, in his capacity as sales representative, had made two or three visits to appellant's place of business in Vincennes prior to September 30, 1961 for the purpose of convincing John Uland, as general manager of the appellant corporation, that he should purchase appellant's supply of raw materials from Royal, Incorporated, Midwest, rather than the then existent supplier for said corporation; and Edward J. Doyle, as sales representative for said Royal, Incorporated, Midwest, was attempting to convince the decedent, John Uland, that by reason of the close proximity of his company to the appellant corporation that his company could perform better and more efficient service in the supplying of raw materials.

Approximately one week prior to September 30, 1961, Doyle invited Uland to come to South Bend to attend the Notre Dame-Oklahoma football game. His expressed intention and purpose was to create a stronger personal relationship with the decedent in an effort to obtain a part of the business of the appellant corporation in the sale of raw materials to said corporation. The decedent, John Uland, accepted said invitation and made the trip to South Bend in his brother's private plane where he was met by Doyle at the airport,

taken to lunch and thereafter attended the Notre Dame-Oklahoma football game. Appellee's decedent was forced to leave the game and commence his return flight because of inclement weather and while enroute back to Vincennes the plane crashed and he sustained fatal injuries.

During a part of the time at the airport and from the airport into the City of South Bend, Doyle and Uland discussed at some length the matter of purchasing raw materials from Doyle's employer, Royal, Incorporated, Midwest.

The finding of the Industrial Board was that the death of appellee's decedent arose out of and in the course of his employment as general manager of the appellant corporation and the Board entered a maximum award for the benefit of the widow and the minor dependents of the decedent, John Uland. From the uncontradicted evidence in this case we are of the opinion that the Board could have found that the decedent in his managerial capacity with his company was exercising his perogative and judgment in accepting the invitation to discuss business relationships and also to attend the football game, such a determination could be sustained solely on the testimony of Edward Doyle who testified as follows: "My purpose in asking Mr. Uland to come to South Bend was to discuss this fiber glass sale with him." There was also uncontradicted and direct evidence that John S. Uland as general manager ". . . pretty well ran the whole operation." The facts before the Board and reasonable inferences to be drawn therefrom were sufficient for the Board to determine that Uland had wide discretion in his dealings with other persons in regard to his company in his capacity as general manager of U. S. Fiber Glass Industries.

The appellant relies principally upon the case of *Tom Joyce 7 Up Company v. Layman* (1942), 112 Ind. App. 369, 44 N. E. 2d 998 in arguing that the decedent's death did not as a matter of law arise in the course of his employment. In *Tom Joyce, supra,* the appellee was employed by appellant at its "7 Up" bottling plant as a driver-salesman. Appellee's duties required him to sell appellant's product, solicit new business and place signs advertising appellant's product. The employee joined a bowling team organized by an independent distributor at the distributor's sole request. The bowling team was known as the "7 Up Team" and was in competition with other teams that bore the names of other soft drinks. As stated in that opinion ". . . there was no evidence from which it could be inferred that the employment of appellee by appellant required or contemplated his participation as a member of the bowling team . . ." On a trip to his home from bowling on the "7 Up Team" appellee was injured in an automobile accident. The Board allowed workmen's compensation for such injury.

In reversing the Board's determination in that case, the Appellate Court stated on p. 376:

"Before an injury is in the course of the employment, the employee must be fulfilling the duty of the employment or be engaged in doing something incidental to it. The evidence does not establish that the appellee was doing this."

As can be seen from an examination of the *Tom Joyce* case, it is not authority requiring us to reverse the finding of the Board in the instant case. The most basic distinguishing factors between *Tom Joyce* and this case seem to be that: here we have an employee in a managerial capacity who has authority to act under his own discretion in regard to company mat-

ters whereas in *Tom Joyce* the driver-employee had definite duties one of which was *not* necessarily to join a bowling team; further, the employee in *Tom Joyce* did not seem to occupy a managerial position and therefore did not have the discretion in action which is naturally attendant to such position. Also, there was no evidence in the *Tom Joyce* case to the effect that the employer even contemplated the employee's participation in the bowling team; whereas in the case at bar, the very nature of appellant's position as manager could contemplate his mixing "work with play" as he did in attending the football game. As aptly stated in Larsen, *Workmen's Compensation Law*, Vol. 1, p. 244:

> "There are some employees a substantial part of whose work is what looks like play to the rest of us."

So we see that the simple fact that one employee is "bowling" in one case and not being engaged in the course of his employment, is not authority for the proposition that another employee, similarly attending a football game, is not engaged in the course of his employment. The *nature* of the employment in such a case may be the distinguishing factor, which it is in comparing *Tom Joyce* to the case at bar.

Indeed, *Tom Joyce 7 Up Company v. Layman, supra*, provides the general rule which we follow in making our determination herein. The rule which we readily adhere to is stated on p. 375:

> "When an employee is directly engaged in doing, in an authorized manner, an act for which he is *expressly or impliedly employed*, he is indubitably in the course of his employment." (our emphasis)

In the instant case, there is uncontradicted evidence

that Uland was acting in a capacity for which he was *expressly* employed by meeting with the sales representative for the distributor of plastic raw materials. This conclusion is. possible especially because Uland had discretion to act in this manner as an incident to his managerial position. As stated as far back as 1919 by this court:

">. . . An employee, who in an honest attempt to discharge a duty assigned him, does an act incidental thereto *not specifically directed,* or departs from the usual methods of performing his work, does not thereby necessarily deprive himself, or his .dependents, of a right to compensation. . ." *Nordyke, etc., Co.* v. *Swift* (1919), 71 Ind. App. 176, 184, 185, 123 N. E. 449. (our emphasis)

As to whether certain acts of managerial employees may be in the course of employment, we find this statement apropos:

"Since their employment involves a great many managerial functions and discretionary acts, the course (of employment) may be much broader than that of the ordinary workman. Their position imposes upon them responsibilities which often call for action beyond their regular hours." Small, *Workmen's Compensation Law of Indiana,* p. 163.

We believe that the facts in this case bring it squarely within the "Dual purpose trips" doctrine. The rule to follow in determining whether an injury or fatality. arises in the course of employment when the employee is engaged in a "dual purpose trip" is found in the landmark decision of *Marks v. Gray* (1929), 251 N. Y. 90, 93, 167 N. E. 181. In this case Judge Cardoza stated:

"If the work of the employee creates a necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own . . . If, however, the work has had no part in creating the neces-

sity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."*

In the instant case, the necessary functions of Uland as general manager "created the necessity" for his traveling to South Bend to meet with Doyle to discuss the service that Doyle could provide for Uland's company. The inference is definitely present that U. S. Fiber Glass Industries could have obtained a benefit from the service that Doyle could provide. In fact, business was discussed between Doyle and Uland in South Bend. We find no evidence in the record which would necessitate the unqualified conclusion that Uland would have made the trip to attend the football game had the business errand "been dropped"—i.e., if Doyle had cancelled his invitation.

The test in *Marks v. Gray, supra,* to the effect that an employee may suffer a casualty "in the course" of his employment when engaged in a dual purpose trip is thus satisfied. Also, in view of the distinction between *Tom Joyce 7 Up Company* v. *Layman, supra,* and the instant case, the former decision does not compel a reversal of the Board's determination in the case at bar. This conclusion is especially necessary because the decedent was the general manager for his employer and such managerial capacity carried with it the right to exercise his own judgment in matters pertaining to his employment. Therefore, in applying the axiomatic rule of judicial review of the Board's finding to the effect that it will not be reversed unless such is " . . . tainted by an error of law",

*For specific approval and application of this rule in Indiana, see *Fleeger* v. *Nicholson Brothers* (1934), 100 Ind. App. 103, 192 N. E. 842.

*Crown Products Co.* v. *Brandenburg* (1955), 126 Ind. App. 48, 55, 129 N. E. 2d 134, we conclude that no error was committed.

We therefore hold that the award of the Industrial Board should be affirmed.

Award affirmed.

Bierly, P.J., Mote and Smith, JJ., concur.

NOTE.—Reported in 206 N. E. 2d 385.