**INDIANA & MICHIGAN ELECTRIC COMPANY, Appellant,**

v.

**Deanna L. MORGAN, Surviving Spouse of Daniel L. Morgan, Deceased, and as Parent and Natural Guardian of Jeshua Jo Lee Morgan, Minor Child of Daniel L. Morgan, Deceased, Appellee.**

No. 93A02–8601–EX–8.

Court of Appeals of Indiana,
First District.

June 30, 1986.
Rehearing Denied Aug. 19, 1986.

Edward L. Murphy, Jr., Richard P. Samek, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for appellant.

Stanley L. Campbell, Fort Wayne, for appellee.

## STATEMENT OF THE CASE

NEAL, Judge.

On August 2, 1982, plaintiff-appellee, Deanna L. Morgan (Mrs. Morgan), filed a claim with the Industrial Board of Indiana for compensation for the death of her husband, Daniel L. Morgan (Morgan), arising from an accident which occurred while Morgan was an employee of Indiana & Michigan Electric Company (I & M). In proceedings before the single hearing member of the Board, I & M filed its Special Answer raising the affirmative defense that Morgan's intoxication while operating his automobile was the proximate cause of his death. The single hearing member ruled that Mrs. Morgan failed to prove that the accident arose out of and in the course of Morgan's employment, and even if it had, compensation was barred because the accident was caused by Morgan's intoxication. Upon review of the single hearing member's decision, the Full Industrial Board reversed and ruled that the accident did arise out of and in the course of Morgan's employment. I & M appeals from this ruling.

We reverse.

## STATEMENT OF THE FACTS

Morgan was an employee of I & M which was involved in a construction operation near Huntingburg, Indiana. Irby Construction Company (Irby) was the contractor at I & M's construction project, and I & M and Irby employees worked together on the project. While working on this particular project, Morgan and the other I & M employees were lodged at the Dutchman Inn in Huntingburg with lodging and meal expenses paid by I & M. Since Morgan maintained a permanent residence in Fort Wayne, Indiana, I & M assigned him, as well as other employees, a company automobile to drive while away from home.

On December 17, 1981, both I & M and Irby were winding down their construction activities in anticipation of the Christmas break. I & M employees were planning to return to Fort Wayne on the following day. On the evening of the 17th, the Dutchman Inn sponsored an "open house" Christmas party for its regular guests, such as I & M's employees, which included hors d'oeurves and free drinks, both alcoholic and non-alcoholic, to be served from 5:30 p.m. to 7:00 p.m. Meanwhile, Irby was conducting its annual Christmas dinner for its employees, the employees' families, and guests, which was scheduled on the 17th from 7:00 p.m. to 9:00 p.m. No alcoholic beverages were to be served or allowed at the Irby dinner. The Irby dinner was held at the Lincoln Trails Inn Motel in Tell City, Indiana, which is approximately 40 miles southeast of Huntingburg. The I & M employees, including Morgan, were invited to the dinner by Julius Shumaker, the field superintendent for Irby.

The account of Morgan's activities and intentions on the evening of December 17th is based on the testimony of witnesses who were with Morgan or talked to him on that evening. John Gentry, I & M's supervising engineer and Morgan's supervisor, was with Morgan from approximately 5:30 p.m. until 7:00 p.m. at the open house. During this period of time, Mr. Gentry observed Morgan drinking one or two cans of beer. Before going to the open house party, Morgan discussed the Irby dinner with Darrell Radesk, and Mr. Radesk testified that Morgan and he planned to go together to the Irby dinner. When Mr. Radesk found Morgan at the open house party around 6:00 p.m. and asked Morgan if he was ready to go to the Irby dinner, Morgan told Mr. Radesk to go by himself and that he would come down later by himself. At approximately 7:00 p.m., Morgan told Gentry that

he was going to his room to shower and to get ready to eat dinner. Morgan made no comment to Gentry regarding where he was going to eat dinner or that he intended to go to the Irby dinner.

Morgan was next seen at the front desk at the Dutchman Inn around 7:30 p.m. where he advised Chester Sims, another I & M employee, that he would see Mr. Sims in the Inn's lounge to listen to the band which was to start around 9:00 or 9:30 p.m. The next account of Morgan's whereabouts was at 9:06 p.m. when Morgan telephoned his wife in Fort Wayne from his motel room and indicated to her that he intended to attend Irby's dinner party in Tell City.

At approximately 10:50 p.m., Morgan was killed in an automobile accident on a two-lane state highway which heads in a general north-south direction. Morgan was driving north toward Huntingburg when the accident occurred approximately 16.5 miles south of Huntingburg.

### ISSUES

I & M raises the following four issues:

I. Whether the Full Industrial Board erred as a matter of law by entering Conclusions of Law and Fact which are unsupported by appropriate findings of fact.

II. Whether the Full Industrial Board erred as a matter of law by entering findings of fact which are unsupported by the evidence.

III. Whether the Full Industrial Board erred as a matter of law in finding that the plaintiff's decedent's accident and death "arose out of and in the course of" his employment with appellant.

IV. Whether the Full Industrial Board erred as a matter of law in failing to make any findings, general or specific, on the issues raised by appellant's Special Answer.

However, because of our resolution of Issue III, we need not fully address the other issues.

### DISCUSSION AND DECISION

In order to recover under Indiana's Workmen's Compensation Act, it was Mrs. Morgan's burden to prove that her husband's death arose "out of and in the course of the employment." IND.CODE 22-3-2-2. Since Morgan's job required that he work at a place away from his permanent residence, his actions are governed by standards set for traveling employees. *See Olinger Construction Co. v. Mosbey* (1981), Ind.App., 427 N.E.2d 910, *trans. denied.* Due to the nature of the traveling employee's job, the requirement that a compensable injury must "arise out of and in the course of the employment" has been somewhat relaxed. *Id.* Nevertheless, our courts still require that a plaintiff prove his injury occurred both "out of" and "in the course of" his employment. *See Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969; *Olinger Construction Co., supra.*

An accident arises "out of" the employment when a causal connection exists between the injury and the duties or services of employment. *Evans, supra; Prater v. Indiana Briquetting Corp.* (1969), 253 Ind. 83, 251 N.E.2d 810; *Suburban Ready Mix Concrete v. Zion* (1983), Ind.App., 443 N.E.2d 1241; *Estey Piano Corp. v. Steffen* (1975), 164 Ind.App. 239, 328 N.E.2d 240. This causal connection is established when the accident arises out of a risk incidental to the employment. *Zion, supra; Steffen, supra.*

Risks incidental to and deemed arising out of employment include acts of employees which are reasonably necessary to their life, comfort or convenience, even though such acts are technically not acts of service. *Evans, supra; Prater, supra; McDaniel v. Sage* (1977), 174 Ind.App. 71, 366 N.E.2d 202. For example, where an employee is washing up after work, satisfying his thirst, seeking fresh air, answering telephone calls, eating lunch, or going to the toilet, such personal acts have been held to be in the pursuit of personal comfort or convenience and thus incidental to employment. 30 I.L.E. *Workmen's Com-*

*pensation* Sec. 125 (1960); B. SMALL, WORKMEN'S COMPENSATION LAW Sec. 6.15 (1950). As *Olinger Construction Co., supra,* suggests, the personal comfort or convenience needs of a traveling employee which arise out of or are incidental to employment may be further relaxed. Nevertheless, where an employee abandons or breaks the continuity of his employment for his individual purpose or benefit, engaging in activities not connected with the duties of his employment, such actions do not arise out of the employment. *See Mathews v. Jim and Ed's Service Station* (1964), 136 Ind.App. 28, 196 N.E.2d 282; 30 I.L.E. *Workmen's Compensation* Sec. 124 (1960); B. SMALL, *supra,* at Sec. 6.12, p. 143.

■ Accidents which occur "in the course of" employment refer to the time, place, and circumstances in which they take place, *Lincoln v. Whirlpool Corp.* (1972), 151 Ind.App. 190, 279 N.E.2d 596, rather than referring to the element of causation. *Burger Chef Systems, Inc. v. Wilson* (1970), 147 Ind.App. 556, 262 N.E.2d 660. In other words, if an injury occurs within the period of employment, at a place where the employee may reasonably be, and while he is fulfilling the duties of his employment, or is engaged in doing something incidental to it, it arises in the course of employment. *See U.S. Fiber Glass Industries v. Uland* (1965), 137 Ind.App. 278, 206 N.E.2d 385. In the context of a traveling employee, the court in *Olinger Construction Co., supra* at 913, stated:

"Thus, while the requirement that the accident occur 'in the course of' the employment usually means the accident must occur within the period of the employment, because of the special requirements of the traveling employee's job, the traveling employee is generally held to be in the course of his employment from the time he begins his journey until he returns to his home or permanent place of business unless he embarks on a purely personal errand. *C & E Trucking v. Stahl* (1962), 135 Ind.App. 600, 181 N.E.2d 21 [*trans. denied*]; *Business Systems v. Gilfillen* (1950), 120 Ind.App.

565, 92 N.E.2d 868 [*trans. denied*]; *See also B. Small, Workmen's Compensation Law in Indiana,* Sec. 7.4 (1976 Supp.)" (Footnote omitted.)

■ While there are distinctions between the elements "out of" and "in the course of," some similarities and overlap exist. Incidental activities such as attending to physical comfort or necessity may also occur in the course of employment. *See B. SMALL, supra,* at Sec. 7.5, pp. 166–67. Activities which advance, either directly or indirectly, an employer's interests or are for the mutual benefit of the employer and employee may be incidental to and arise in the course of employment. *Ski World, Inc. v. Fife* (1986), Ind.App., 489 N.E.2d 72; 30 I.L.E. *Workmen's Compensation* Sec. 126 (1960). And, as recognized in *Olinger Construction Corp., supra,* even a traveling employee can engage in a purely personal errand for his exclusive benefit, and an injury arising in the course of such personal errand will not be compensable. *See also B. SMALL, supra,* at Sec. 7.6.

■ The fine line of whether an activity arises out of and in the course of employment or is at least incidental thereto, or whether the activity is purely personal is a question of fact to be determined by the Industrial Board. *Burger Chef Systems, Inc., supra.* However, a claimant seeking relief under the Workmen's Compensation Act must still establish every fact necessary to support the elements of a legal award. *Mathews, supra.*

■ In the case at bar, Mrs. Morgan offered no direct evidence which proves exactly what her husband was doing at 10:50 p.m. when he was involved in the fatal accident as he was heading north just 16.5 miles south of Huntingburg. It was stipulated that at that time, Morgan was not assigned nor was he performing any tasks or employment duties for I & M. Evidence of Morgan's intent is conflicting: he was originally to attend the Irby dinner with Mr. Radesk, but at 6:00 p.m., Morgan said he would go alone later; at 7:00 p.m. Morgan stated he was going to his room to shower and get something to eat; at 7:30

p.m. Morgan said he would see Mr. Sims in the lounge to see the band play at 9:00 or 9:30; at 9:06, and after the Irby dinner was already over, Morgan called his wife and said he was going to drive the 40 miles to the Irby dinner; and at 10:50 he was driving north just 16.5 miles south of Huntingburg. Morgan was not employed in a managerial capacity which would carry with it the right to exercise his own judgment in matters involving his employment. *See U.S. Fibre Glass Industries, supra.* At no time did he advise his supervisor that he was driving beyond the 10 mile radius in which he was staying, a practice requested by I & M. At the time of his accident, Morgan's blood alcohol content was .11, and the practice of driving an I & M automobile while under the influence of alcohol was prohibited by I & M.[1]

Mrs. Morgan claims these facts support reasonable inferences or presumptions that her husband's accident arose out of and in the course of his employment. She claims it is reasonable to infer that since at 7:00 p.m. Morgan said he was going to get something to eat, at 10:50 p.m. he was doing just that. Alternatively, she suggests that it is reasonable to assume Morgan went toward Tell City but came back toward Huntingburg either because he found that the Irby dinner was over, or because the weather conditions along the way caused him to turn around before reaching Tell City. These are not inferences or presumptions. They are mere speculations.

In support, Mrs. Morgan relies primarily on the language contained in *Olinger Construction Co., supra.* However, reliance on legal rules or principles without reference to the facts providing the foundation for such rules or principles can distort their meaning. The proven facts in *Olinger Construction Co.* show that an employee was killed in his motel room where he was staying while working on an out-of-town job. These facts clearly meet the tests

under the Workmen's Compensation Act and support an award of compensation. *Olinger Construction Co.* is not without limit; the case specifically excepted the situation where a traveling employee embarks on a purely personal errand. In the case at bar, no one knows why Morgan was driving north just 16.5 miles south of Huntingburg in his company automobile with evidence of intoxication at 10:50 p.m. Had Morgan been traveling to get something to eat he may have been engaged in an activity incidental to his employment, but no such finding was made by the Industrial Board, nor was there any evidence of probative value to support such a finding.

Mrs. Morgan's claim that it is reasonable to presume Morgan was in some way trying to attend the Irby dinner and therefore engaged in an activity incidental to his employment is also without merit. In *Noble v. Zimmerman* (1956), 237 Ind. 556, 146 N.E.2d 828, our supreme court stated the general rule regarding an employer's liability for injuries incurred during employment related recreational activities:

> "Generally, injuries suffered by an employee while watching, participating in, or going to or coming from recreational activities sponsored in whole or in part by the employer, are not compensable, since such injuries are usually sustained while the employee is not performing any duty for which he has been either expressly or impliedly employed. In other words the injury cannot ordinarily be said to have resulted from an accident arising out of and in the course of the employment.

> A distinction is made, however, in those cases where the recreation which caused the injury, either directly or indirectly, was sponsored by the employer as a matter of business and not because of altruistic motives. That is, the employer exercised control or domination over the recreation for the purpose of developing

---

1. Although the Full Board found I & M had acquiesced in and condoned the drinking of alcohol by its employees at the open house, no finding was made, nor does evidence suggest that I & M acquiesced in the use of its automobile while an employee was under the influence of alcohol.

better service and greater efficiency among the employees, thereby reaping a direct business benefit from the recreations sponsored."

*Id.* at 263–64; 146 N.E.2d at 831–32, citing Schneider's Workmen's Compensation Law. *Cf.* 1A A. LARSON, THE LAW OF WORKMEN'S COMPENSATION Sec. 22.00 (1985); Note, *Recreational Injuries and Workmen's Compensation: Infusion of Common-Law, Agency-Tort Concepts*, 34 IND.L.J. 310 (1959) (listing similar factors and criteria). In the case at bar, it was Irby, the contractor, who was sponsoring the dinner, not I & M, Morgan's employer. I & M only had a policy of recommending to its employees that they attend such dinner parties if the employees wanted to attend. There was no dominion or control by I & M over its employees requiring them to attend, nor is attendance a duty for which the employees were expressly or impliedly employed. Attendance was recommended for purely altruistic motives, and not to reap direct business benefit.

Our result here is the same regardless of whether Morgan was attending as a traveling employee, or whether he was invited to a recreational function sponsored by a contractor near his home in Fort Wayne. The recreation was not a direct part of the employment nor contemplated by it. I & M did not sponsor or control the recreation, nor did it compel its employees to attend. The benefit derived from sponsoring such events accrues to Irby, the benefit to I & M is not so direct. Even if attendance could be considered as arising out of and in the course of the employment, the only established facts are simply that Morgan did not go to the Irby dinner. Mr. Shumaker invited Morgan and had a place set for him. Mr. Shumaker greeted Mr. Radesk, the only I & M employee to attend. The dinner party was scheduled from 7:00 p.m. to 9:00 p.m., but at 9:06 p.m., Morgan was still 40 miles away in Huntingburg. There is no evidence which could establish that Morgan attended or even attempted to attend the Irby dinner for the benefit of his employer, I & M.

Mrs. Morgan's claims do not support logical or reasonable presumptions or inferences; rather, these claims are based on speculation from conflicting evidence of Morgan's intent throughout the evening. Mrs. Morgan disregards the established fact that Morgan did not attend the Irby dinner, and disregards that even traveling employees can embark on purely personal errands. In short, there was no evidence submitted which proves Morgan was engaged in an activity which arose out of and in the course of his employment at the time of his accident.

It is also apparent that the Full Industrial Board similarly disregarded these factors. In its Conclusions of Fact and Law, the Full Industrial Board made the following ruling:

"1. At the time of his death, Daniel L. Morgan was a traveling employee of Indiana & Michigan Electric Company, that he was away from home for the benefit of his employer, and that the accident arose in and out of his employment with Indiana & Michigan Electric Company.

2. Daniel L. Morgan had been sent to Southern Indiana by his employer and was required to be away from his home and his regular place of work because of his job.

3. At the time of the accident, Daniel L. Morgan was driving an automobile assigned to him by Indiana & Michigan Electric Company on U.S. 231, incidental to his health, comfort or convenience and was at a place where the accident occurred because of his employment and the accident arose out of his employment with Indiana & Michigan Electric Company...."

From these conclusions it is apparent that the Full Industrial Board found that any activity Morgan was engaged in while away from his home arose out of and in the course of his employment. However, as we pointed out above, this is not the law, nor were there facts presented which could support the conclusion of the Board.

Under our scope of appellate review of administrative decisions, we are not to weigh the evidence, judge the credibility of witnesses, or substitute our judgment of the factual record for that of the Industrial Board's. *Lona v. Sosa* (1981), Ind.App., 420 N.E.2d 890, *trans. denied.* If the evidence favorable to the Industrial Board's decision supports its award, we will affirm; otherwise, if reasonable men would be bound to reach the opposite conclusion from the evidence in the record, we will reverse. *Coachmen Industries, Inc. v. Yoder* (1981), Ind.App., 422 N.E.2d 384. As stated in *B.P.O. Elks, #209 v. Sponholtz* (1969), 144 Ind.App. 150, 156, 244 N.E.2d 923, 926:

> "Under the authority of the Workmens' Compensation Act, and many cases decided by both the Supreme Court of Indiana and by this Court, it was the burden of the appellee herein to establish before the Industrial Board by evidence of probative value, free from conjecture, surmise, or mere guess, that the appellee suffered his injuries or met with his accident, while in the course of his employment and under conditions which may be reasonably considered as incidental to his employment, or as having an incidental connection therewith...." (Citations omitted.)

*See also Burger Chef Systems, Inc., supra.* As stated above, Mrs. Morgan's contentions are based on speculation; they are not free from conjecture, surmise, or mere guess. In other words, the conclusions of the Full Industrial Board are not supported by evidence of probative value and therefore must be reversed.

Judgment reversed.

ROBERTSON, P.J., and RATLIFF, J., concur.