**Cindy WINE–SETTERGREN and Jay Settergren, Appellants (Plaintiffs Below),**

v.

**Robert H. LAMEY, Jr., Appellee (Defendant Below).**

No. 49S04–9909–CV–489.

Supreme Court of Indiana.

Sept. 22, 1999.

---

Robert G. Barker, Price & Barker, Indianapolis, Indiana, Attorneys for Appellant.

James L. Peterson, David J. Mallon, Jr., Christopher S. Sears, John J. Sullivan, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellants Cindy Wine–Settergren and Jay Settergren appeal the dismissal of their personal injury and loss of consortium actions against Robert H. Lamey, Jr., for lack of subject matter jurisdiction. The trial court entered this order pursuant to the exclusivity and subrogation provisions of the Worker's Compensation Act, which preclude negligence-based actions against those found to be "in the same employ" as the plaintiff at the time of the accidental injury. (R. at 70, citing Ind. Code Ann. § 22–3–2–13 (West 1991).)

The Court of Appeals affirmed. *Wine–Settergren v. Lamey,* 654 N.E.2d 920 (Ind. Ct.App. 1995). We grant transfer.

### Facts

On July 8, 1992, Wine–Settergren and Lamey were both working for radio stations owned and managed by Horizon Broadcasting, Inc., and located in the same building. Wine–Settergren worked as a morning radio personality and news director for WKLR, and Lamey worked as the sports director for WIBC. Wine–Settergren had recently returned to work after undergoing nose surgery on or about June 26, 1992, and her nose was still susceptible to further injury by the slightest touch or pressure.

At about 6 a.m. the morning of July 8th, Wine–Settergren and Lamey were both in the Horizon building going about their daily routines. Wine–Settergren took a short break to buy some coffee and crackers from a vending machine. Lamey, while walking in the hallway outside of the small vending machine room, shouted over his shoulder at another co-employee, "[G]et off the phone, get to work." (R. at 231.) This loud shout surprised Wine–Settergren. She let out a startled gasp, saying "Oh, my God, Bob." (*Id.;* Wine–Settergren Dep., R. at 96.) Lamey heard Wine–Settergren's gasp and, realizing he had startled her, entered the vending machine room to apologize and console her. As Wine–Settergren turned around from the coffee machine, Lamey said "Oh, I'm sorry," and embraced her in a strong hug. (Wine–Settergren Dep., R. at 96.) As he did, he pulled her head into his collarbone, injuring her nose. From this, Wine–Settergren claims permanent pain and suffering, loss of her senses of taste and smell, the need for further cosmetic surgeries to restraighten and reshape her nose, and the loss of wages due to the subsequent surgeries. Apparently, Horizon's worker's compensation insurance carrier paid for nearly all of her medical bills, but Wine–Settergren has never appeared before a Worker's Compensation Board or filed a worker's compensation claim.

### I. Standard of Review

The trial court has considerable latitude in devising procedures to ferret out the facts pertinent to jurisdiction and in weighing that evidence to resolve factual disputes affecting the jurisdictional determination. *Perry v. Stitzer Buick GMC,*

*Inc.,* 637 N.E.2d 1282, 1286–87 (Ind.1994). The appealing party has the burden to demonstrate that the trial court erred in ruling on jurisdiction.

## II. "In the Same Employ"

The Worker's Compensation Act states that the compensation it provides to employees exclude all other rights and remedies available to them for accidental personal injury or death arising out of and in the course of their employments. Ind. Code Ann. § 22–3–2–6 (West Supp.1997); *Evans v. Yankeetown Dock Corp.,* 491 N.E.2d 969 (Ind.1986). This exclusive remedy provision provides immunity from suit for employers, *Evans,* 491 N.E.2d at 973, and those "in the same employ," *O'Dell v. State Farm Mutual Auto. Ins. Co.,* 173 Ind.App. 106, 110, 362 N.E.2d 862, 866 (1977), who cause accidental injuries. Ind.Code Ann. § 22–3–2–13· (West 1991). Therefore, to maintain a common-law action against a co-employee tortfeasor for an injury arising out of and occurring in the course of the plaintiff's employment, she must either show that the injury was not "by accident," *Tippmann v. Hensler,* 716 N.E.2d 372, 375 (Ind.1999), or that the defendant was not "in the same employ" when the injury occurred. Because Wine–Settergren's injuries were not intentionally caused,[1] and thus were "by accident," *see id.,* we will proceed to the issue of whether Lamey and she were "in the same employ" when the accidental injury occurred.

### A. Two Interpretations of "In the Same Employ"

As the Court of Appeals noted, there are two lines of Indiana Court of Appeals cases interpreting the phrase "in the same employ." *Wine–Settergren,* 654 N.E.2d at ——.

One line, exemplified by *Martin v. Powell,* 477 N.E.2d 943 (Ind.Ct.App.1985), *trans. dismissed,* and *Seiler v. Grow,* 507 N.E.2d 628, 631 (Ind.Ct.App.1987), *trans. denied,* states that the phrase "in the same employ" looks to determine whether the accidental injury arose *"in the course of* [the tortfeasor employee's] employment." *Martin,* 477 N.E.2d at 945; *Seiler,* 507 N.E.2d at 631. Subsequent panels of the Court of Appeals have modified *Martin*'s test somewhat. One has reinterpreted it to mean actually "arising *out of* [the tortfeasor employee's] employment." *Fields v. Cummins Emp. Fed. Credit Union,* 540 N.E.2d 631, 637–38 (Ind.Ct.App.1989) (emphasis added). Others have combined the two notions. For example, one panel has stated that "in the same employ" means "the personal injury occurs *in the course of and arises out of* the co-employee's employment," *Thiellen v. Graves,* 530 N.E.2d 765, 768 (Ind.Ct.App.1988) (emphasis added), and another that "the act caus-

---

**1.** In Wine–Settergren's Deposition she stated that she knew her injuries were accidentally caused, (Wine–Settergren Dep., R. at 130), and that Lamey, by hugging her, did not intend to hurt her, (*id.*), or sexually harass her, (*id.* at 97). Also, in her complaint against Lamey she alleged only that her injuries were the "direct and proximate result of Lamey's negligence" and did not alternatively allege that Lamey intended to harm her. (Wine–Settergren Complaint, R. at 11, 12.) On appeal, however, Wine–Settergren attempts to characterize Lamey's act as an "intentional wrongdoing" and an "intentional tort," (Appellant's Transfer Br. at 8), which rose to the level of criminal battery, (*see* Appellant's Br. at 12), and argues that "[i]t is for the trier of fact to determine what Lamey intended when he assaulted Wine[-Settergren]." (*Id.* at 13.) She is wrong. Whether the injury was accidentally or intentionally caused is one of the issues the trial court must address to determine its own jurisdiction. *Tippmann,* 716 N.E.2d at 375–376; *see Baker v. Westinghouse Elec. Corp.,* 637 N.E.2d 1271, 1272–75 (Ind.1994). As noted above, the trial court has much discretion in determining facts relevant to the jurisdictional question. *Perry,* 637 N.E.2d at 1287. The only evidence before the court was Wine–Settergren's own statements concerning her belief that her injuries were negligently and accidentally caused, and not the result of an intent to harass or harm. Given this evidence, the trial court's determination that her injuries were accidentally caused was not clearly erroneous.

ing the injury *arose out of and was incidental to* the employment," *Rodgers v. Hembd,* 518 N.E.2d 1120, 1122 (Ind.Ct. App.1988) (emphasis added). Although these cases use slightly different language, they express a common theme: application of the phrase "in the same employ" includes analysis of the co-employee's injury-causing actions to determine whether they were causally related to his employment.

Under this approach, certain non-job related actions, such as horseplay and sexual harassment, have been found not to have the necessary causal connection to the co-employee defendant's employment, thus making her "not in the same employ" and vulnerable to suit. *E.g., Fields,* 540 N.E.2d at 638; *Martin,* 477 N.E.2d 943.

The other line of cases, exemplified by *Weldy v. Kline,* 616 N.E.2d 398 (Ind.Ct. App.1993), chose not to engage in a *Martin*-type analysis because it disapproved any interpretation of "in the same employ" which analyzed the co-employee tortfeasor's activities that led to the injury or death. As the panel in *Weldy* stated, "The Act is concerned with only the *injured employee* and the circumstances surrounding his or her injury." *Id.* at 403. According to the *Weldy* court, "The Act does not scrutinize the actions of the ... co-employee with regard to whether an injury occurred in the course of employment. For us to do so is to create a category of persons subject to liability unaddressed by the statute." *Id.* at 402. Therefore, the *Weldy* court looked to a test enunciated in *Ward v. Tillman,* 179 Ind.App. 626, 631, 386 N.E.2d 1003, 1005 (1979), which stated that the co-employee defendant is "in the same employ" if he "could obtain compensation benefits in the same or similar circumstances" as the injured plaintiff. *Weldy,* 616 N.E.2d at 403 (citing *Ward*); *see also Tapia v. Heavner,* 648 N.E.2d 1202, 1208 (Ind.Ct.App.1995).

As currently interpreted, the *Weldy* test, instead of focusing on the actions of the co-employee defendant, reviews only the actions of the *injured plaintiff* and asks whether the defendant, if he had received rather than caused the injury, could recover similar benefits from the plaintiff's employer. For example, the defendant in *Weldy* caused the plaintiff widow's husband to drown by throwing him into a pool while at an after-work party sponsored by the employer for its employees. The *Weldy* panel applied its "in the same employ" standard, noting that both men

> worked in the kitchen at the Holiday Inn and both attended the party given by their mutual employer. As employees they were identically situated. Should the positions have been reversed, Weldy would have been able to obtain compensation benefits to the same extent as Kline. We can think of no clearer case of someone 'in the same employ.'

*Weldy,* 616 N.E.2d at 403. *See also Tapia,* 648 N.E.2d at 1208 (applying *Ward* test in like manner to the facts of its case and coming to the same conclusion). The *Wine–Settergren* panel's application of the *Ward* test is also illustrative:

> [Wine–Settergren and Lamey] both worked for Horizon and were similarly situated radio personalities. If the situation had been reversed, Lamey would have been able to obtain worker's compensation benefits to the same extent as Wine[-Settergren]. Hence, worker's compensation is Wine[-Settergren]'s exclusive remedy and the trial court lacked subject matter jurisdiction. . . .

*Wine–Settergren,* 654 N.E.2d at —— ——.

By analyzing only the actions of the victim in determining whether she and the defendant were "in the same employ," this interpretation of the *Ward* test effectively equates "in the same employ" with merely "having the same employer." Once the defendant has shown that the plaintiff could receive or has received worker's compensation for her injury, we cannot think of an instance where the defendant would be subject to suit under this test if he and the plaintiff were also co-employ-

ees. Nor could there be such an instance. By placing the defendant in the shoes of plaintiff and stating that the plaintiff's injuries are compensable under the Act,[2] the defendant has, under *Weldy*'s test, been found "in the same employ."

The major difference between the two lines of cases is their focus: one incorporates a review of the co-employee tortfeasor's actions, the other looks only at the plaintiff's actions, effectively analyzing only whether the two employees shared a common employer. Our determination of the appropriate interpretation of "in the same employ," therefore, turns on which focus we find appropriate.

### B. The Proper Interpretation of "In the Same Employ"

■ This Court has never formally interpreted the phrase "in the same employ" in the worker's compensation statute.[3] In *Baker v. Westinghouse Elec. Corp.*, 637 N.E.2d 1271 (Ind.1994), however, we indicated our approval of the *Martin*-line's review of the co-employee defendant's actions in applying the "in the same employ" provision:

> [I]f the tortfeasor co-worker was not acting in the course of his employment at the time he inflicted the injuries, then he is not considered to be 'in the same employ' as the sufferer.... In such a case, the sufferer may not only collect workers [sic] compensation but may also bring suit against the tortfeasor co-

worker pursuant to the claim and subrogation provisions of Ind.Code Ann. § 22–3–2–13 (West 1991).

*Id.* at 1275 n. 6 (citing *Martin*, 477 N.E.2d 943; *Lutz v. DeMars*, 559 N.E.2d 1194 (Ind.Ct.App.1990); *Fields*, 540 N.E.2d 631). Our analysis of precedent and policy today leads us to affirm this prior approval of the *Martin* standard for use in determining when a co-employee tortfeasor is "in the same employ."

### 1. Precedent Supports a Definition that Reviews the Defendant's Actions.

The two tests, which have been seen as incongruous by various Court of Appeals panels, are actually cut from the same cloth. *Weldy* states, "The test, according to the court in *Ward*, ... to determine whether [the parties] were 'in the same employ' is whether or not the denominated defendant ... could obtain compensation benefits under the same or similar circumstances." *Weldy*, 616 N.E.2d at 403 (citing *Ward*, 179 Ind.App. at 631, 386 N.E.2d at 1005). *Ward* cites *O'Dell v. State Farm Mutual Auto. Ins. Co.*, 173 Ind.App. 106, 362 N.E.2d 862 (1977), for the test which *Weldy* propounds. *O'Dell* actually states:

> This is not to say that were these individuals to injure each other while driving on their respective two-week vacations they would be precluded from their common-law remedies. Rather, the test must be that the statutory bar applies

---

**2.** If the plaintiff's injuries are *not* compensable under the Act, then the exclusivity provision would not apply and the issue of whether the defendant had been "in the same employ" would be irrelevant.

**3.** In *Witherspoon v. Salm*, 251 Ind. 575, 243 N.E.2d 876 (1969), an employee was injured and her boss killed when the car in which they were riding was involved in an accident. After receiving worker's compensation, the employee sued the boss' estate, alleging that his negligent driving caused her injuries. This Court, with no analysis as to the intent of the legislature or the policy issues surrounding the interpretation of this phrase, cited a case from another jurisdiction with similar facts and found the defendant "in the same employ." The statute in the cited case limited

liability for work-related accidental injuries to persons other than the employer *"or those conducting his business."* While this employee-immunity provision is similar to "in the same employ," it is arguably much narrower. We do not believe that by so holding this Court meant to narrowly define "in the same employ" to mean only those actively engaged in "conducting the employer's business." Rather, this Court was simply disposing of a "case of first impression" by looking to see how the highest court of another jurisdiction had handled a case with nearly identical facts and a similar employer immunity provision. Thus, this opinion provides little precedential guidance to us today in interpreting the phrase "in the same employ."

*only when both employees were in the course of their employments*, as determined by whether the denominated defendant could obtain compensation benefits if he were the claimant in the same or similar circumstances.

*Id.*, 173 Ind.App. at 111, 362 N.E.2d at 866 (emphasis added). As this quote clearly shows, the test enunciated in *Weldy* (the latter half of this quote) was originally articulated as merely a way to determine when the parties are "in the course of their employments," which necessarily focuses on each of their actions which led to the injury. The *O'Dell* panel never intended for the actions of the defendant to be removed from "in the same employ" consideration. It was merely broadening "in the same employ" to encompass accidental-injury-causing actions which occurred in the course of and arose out of the co-employee's employment, but would not necessarily be considered part of "conducting the employer's business," per se.[4] This concern is understandable. It would not be fair for the injured employee to receive the compensation provided by the Act, and for the uninjured employee not to receive the immunity provided by it, when both were doing exactly the same thing when the accidental injury occurred, being

identically situated in all legally relevant respects but for one being injured and the other not. Such analysis does not remove the focus from the co-employee tortfeasor; it merely investigates whether he, too,[5] was acting in a manner reasonably connected to his employment when the accident occurred.

Judge Neal once wisely wrote, "[R]eliance on legal rules or principles without reference to the facts providing the foundation for such rules or principles can distort their meaning." *Indiana & Michigan Elec. Co. v. Morgan*, 494 N.E.2d 991, 995 (Ind.Ct.App.1986). By not tracing the full history of their test nor viewing it in the context of the cases in which it first appeared, the appellate panels reciting the *O'Dell/Ward* test have misunderstood its focus and misinterpreted its intentions. "The crucial issue ... is not what [the plaintiff] was doing at the time. Rather, we must focus upon [defendant]'s activities.... The worker's compensation act is not designed to insulate co-employees from liability for acts which are not in the course of their employment." *Seiler*, 507 N.E.2d at 631.

**2. Legislative Intent Supports a Definition which Reviews the Defendant's Ac-**

4. *O'Dell* involved a car accident between co-employees while on the employer's premises between shifts. The plaintiff, who had already received worker's compensation under the theory that the accident arose out of and in the course of her deceased husband's employment, argued that the defendant was not "in the same employ" at the time of the accident because only those in the process of "conducting the employer's business" when an accident occurred were "in the same employ" and thus immune under the Act.

The *O'Dell* court disagreed with the plaintiff's argument, finding that the General Assembly, by adding the phrase "in the same employ" to the Act in 1963, had intended to preserve "co-employee immunity from common-law accidents found to have arisen out of and in the course of employment." *O'Dell*, 173 Ind.App. at 110, 362 N.E.2d at 866 (emphasis added). Because the plaintiff had already received worker's compensation on the premise that a driving accident on the employer's premises shortly before one's shift began "arose in the course of employment,"

she could not then turn around and argue that the defendant, who was doing the same thing (the only difference being that the defendant was leaving work shortly after his shift ended rather than arriving shortly before it began) was not acting "in the course of his employment" when he caused the accident.

5. While "in the same employ" denotes review of both parties' actions, the cases generally only mention the defendant's. This is because the issue of whether they were "in the same employ" only matters if the *injured employee's* injuries have already been found to have arisen in the course of and out of her employment. Only then would the Act's exclusivity provision apply to provide the co-employee possible immunity in the first place. If the accidental injury did not so arise, then the exclusivity provision would not apply and the injured employee would be free to bring suit against any tortfeasor whose negligence led to her injury.

**tions.** We also believe that the legislature did not intend for the employment status of the two employees to be the sole determinant of when the litigants are "in the same employ." In *Evans*, 491 N.E.2d 969, while addressing employee personal injury suits against employers, we agreed with Judge Conover's assessment that "where an off-duty employee is injured when struck by his employer's truck in the middle of town on his day off, the legislature did not intend that the Industrial Board should have jurisdiction." *Id.* at 972. If the legislature did not intend for the employment relationship, in and of itself, to insulate an *employer* from negligence suits brought by its employee, we see no reason why it would intend for that relationship, in and of itself, to so insulate the negligent *co-employee.* As we said in *Evans,* "Our role is to construe and apply [legislative] enactments so as to carry out legislative intent." *Id.* at 971.

### 3. Sound Policy Supports a Definition which Reviews the Defendant's Actions.

A test that reviews the actions of the co-employee, instead of effectively inquiring only into whether the litigants share a common employer, is also supported by sound policy.

First, it must be remembered that the remedies provided in the Worker's Compensation Act are "in derogation of common law." It is a well-known principle in Indiana that statutes "in derogation of the common law and are to be strictly construed against limitations on a claimant's right to bring suit." *Collier v. Prater,* 544 N.E.2d 497, 498 (Ind.1989) (citing *Sherfey v. City of Brazil,* 213 Ind. 493, 13 N.E.2d 568 (1938)).

Second, even the theoretical arguments supporting co-employee negligence immunity do not justify such immunity when the co-employee's injury-causing actions do not arise out of and occur in the course of his employment. Worker's compensation was designed as a *quid pro quo* exchange between the employee and the employer. The employer assumed the cost of paying regular and relatively quantifiable amounts under the worker's compensation system in exchange for obviating the threat of large and unexpected awards. The employee gave up his right to pursue a common law remedy for injuries sustained in work-place accidents in exchange for a certain, although possibly smaller, remedy without litigation. *Evans,* 491 N.E.2d at 971; 1 Arthur Larson, The Law of Workmen's Compensation §§ 2.00–2.20 (1997). "Perhaps, so the argument runs, one of the things [the employee] is entitled to expect in return for what he has given up is freedom from common-law suits based on industrial accidents in which he is at fault." 6 Larson, § 72.22. Even if such an argument is true, Professor Larson states, this immunity only attaches to the co-employee when he "is acting within the course of his employment," because the employment increases only his risk of causing employment-related injuries to his fellow-workers, not non-employment related injuries. *Id.* § 72.23.

Finally, it would be unreasonable to allow immunity to a tortfeasor simply because he shares a common employer with the plaintiff. As the Court of Appeals said in *Thiellen,* 530 N.E.2d 765:

> The phrase "in the same employ" must be construed as requiring more than its literal meaning of merely having a common employer. A literal reading would preclude a third party action by an employee who is injured while driving a delivery truck for his employer on a city street against the negligent driver of an automobile who broadsides and injures the employee merely because the negligent driver happens to be a vacationing fellow employee on his way to the airport. That reading is unreasonable.

*Id.* at 767.

Our understanding of precedent, legislative intent, and policy leads us to conclude that for an employee defendant to be "in the same employ" for purposes of the Act,

two things must exist. First, he must be employed by the same employer as the plaintiff. Second, he must have been engaging in actions reasonably related to his employment during a time and under circumstances reasonably incidental to that employment when he accidentally causes the injury. The best way to determine the latter, once the plaintiff's and defendant's co-employment status is resolved, is with the framework currently in place, i.e., by asking whether the defendant's actions causing the accidental injury arose out of and occurred in the course of his and the plaintiff's mutual employment. By so holding we standardize the requirements an employee must satisfy to find himself within the ambit of the worker's compensation act: whether he seeks compensation or immunity, the accidental injury that he either received or caused must have arisen out of and occurred in the course of his employment.[6]

## C. Was Lamey "In the Same Employ"?

Neither party disputes the fact that Wine–Settergren and Lamey were both employed by the same employer when the accidental injury occurred. Therefore, our review of whether Lamey and Wine–Settergren were "in the same employ" turns to whether Lamey's actions, which resulted in Wine–Settergren's injury, arose out of and occurred in the course of their mutual[7] employments.

■■ An accidental injury "arises out of employment" when a causal nexus exists between the action causing the injury and the employee's employment. *Gordon v. Chrysler Motor Corp.*, 585 N.E.2d 1362, 1365 (Ind.Ct.App.1992). This nexus is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment, or when the facts indicate a connection between the injury and the circumstances under which the employment occurs. *Id.* "Employment" here means more than merely performing services directly related to the job for which the employee was hired.[8] It includes activities reasonably incidental to one's employment, such as recreation at an employer-sponsored off-site business meeting or after-hours party, *e.g.*, *Noble v. Zimmerman*, 237 Ind. 556, 146 N.E.2d 828 (1957); *Ski World, Inc. v. Fife*, 489 N.E.2d 72 (Ind.Ct.App.1986), driving to or exiting from work, *e.g.*, *Thiellen*, 530 N.E.2d 765; *O'Dell*, 173 Ind.App. 106, 362 N.E.2d 862, and personal acts reasonably necessary to the life, comfort, and convenience of an employee even though they are not technically acts of service to the employer, *Evans*, 491 N.E.2d at 976; *Vendome Hotel, Inc. v. Gibson*, 122 Ind.App. 604, 608, 105 N.E.2d 906, 908–09 (1952); *Holland–St. Louis Sugar Co. v. Shraluka*, 64 Ind.App. 545, 549–50, 116 N.E. 330, 331 (1917). "For example, where an employee is washing up after work, satisfying his thirst, seeking fresh air, answering telephone calls, eating lunch, or going to the toilet, such personal acts have been held to be in the pursuit of personal comfort or conve-

---

**6.** Although the test first enunciated in *O'Dell* and *Ward* seeks to determine the same thing, its "overly broad" language, *Thiellen*, 530 N.E.2d at 768, has created confusion which has led to its misinterpretation and misapplication. Because the test we announce accomplishes the same task, the *O'Dell/Ward* test is best disregarded.

**7.** Because there is no dispute over the compensability of Wine–Settergren's injuries under the Act, we will assume for purposes of this appeal that her injuries, as they relate to her receiving worker's compensation from her employer, were accidental (i.e., not intended by either Wine–Settergren or her em-

ployer, *Baker*, 637 N.E.2d at 1273,) arose out of, and occurred in the course of her employment.

**8.** To the extent that language in cases such as *Martin* and *Fields* imply otherwise, we disapprove of such language. *See Martin*, 477 N.E.2d at 946 (holding that the accidental injuries at issue did not arise out of the tortfeasor's employment because his actions were "not purely work-related"); *Fields*, 540 N.E.2d at 638 (finding the tortfeasor not immune under Act because his injury-causing actions were "not for the benefit of the employer").

nience and thus incidental to employment." *Indiana & Michigan Elec. Co.*, 494 N.E.2d at 993 (citing 30 I.L.E. *Workmen's Compensation* § 125 (1960); B. Small, Workmen's Compensation Law § 6.15 (1950)).

■ Maintaining a congenial work environment where employees get along with one another is desired by both the employer and the employees. For the employer, such an environment increases employee productivity and teamwork and decreases employee turnover. For the employees, it increases the amount of enjoyment they have while at their place of business. Wine–Settergren admits that Lamey was attempting to apologize and console her after his shout to another employee unintentionally scared her. While embracing another employee in an apologetic and conciliatory hug may not be found in Lamey's job description, such actions are ones that could be reasonably expected between co-employees. Counsel for Lamey articulated this sentiment well:

> A wide variety of interaction occurs among employees in a work place. Hands are shaken, backs are patted, hugs are given all as part of the natural and habitual activities of employees working together. This kind of activity is as much a part of the employment as the machinery used in the workplace.

(Defendant's Post H'rg Br. in Supp. of Mot. to Dismiss, R. at 58.)[9] Even among co-employees who are not the closest of friends, such actions could be reasonably expected. As Justice DeBruler noted in *Moran v. State*, 644 N.E.2d 536, 541 (Ind. 1994), "[I]nhabitants of this state have always valued neighborliness, hospitality, and concern for others, even those who may be strangers." Because no evidence was presented to show that Horizon had prohibited such actions, or had previously reprimanded employees for similar activities in the past to the common knowledge of all the employees, the accidental injury caused by Lamey's actions arose out of his employment.

The "in the course of the employment" requirement refers to the time, place, and circumstances under which the accidental injury occurs, rather than its causation. *Gordon*, 585 N.E.2d at 1365; *Indiana & Michigan Elec. Co.*, 494 N.E.2d at 994; *see Evans*, 491 N.E.2d at 975–76. The accidental injury occurred during the parties' regular working hours and in a vending machine room on the employer's premises where Lamey could reasonably be expected to be during his employment. Therefore, the injury occurred in the course of his employment.

■ Because Wine–Settergren's injuries arose out of and occurred in the course of the parties' mutual employment, she and Lamey were "in the same employ" and Wine–Settergren is barred by the Worker's Compensation Act from bringing a personal injury action against Lamey based upon that accidental injury. Accordingly, the trial court's dismissal of her claim for lack of subject matter jurisdiction was not clearly erroneous. Its dismissal of Jay Settergren's loss of consortium claim was also appropriate. Being derivative in nature, a spouse's loss of consortium claim cannot proceed when the injured spouse's negligence claim against the same party is barred by the exclusivity provision of the Worker's Compensation Statute. *Nelson v. Denkins*, 598 N.E.2d 558 (Ind.Ct.App. 1992); *accord Persons v. United States*, 925 F.2d 292, 297 (9th Cir.1991) ("current legal standards" view loss of consortium

---

9. We note that our holding here in no way encourages or finds reasonable acts of sexual harassment in the workplace. As noted previously, Wine–Settergren specifically stated that she did not believe Lamey intended in any way to sexually assault or harass her by hugging her. (Wine–Settergren Depo., R. at 97.) Also, even if such allegations had been made, they would more appropriately be addressed as part of the "by accident" analysis, *see Tippmann v. Hensler*, 716 N.E.2d at 376, (because injuries resulting from sexual assault are normally not considered accidental), rather than under the "arose out of" prong of the "in the same employ" analysis.

claims as "derivative" of the injured spouse's negligence action; accordingly, when the injured spouse's personal injury action is barred by statute, so is the other spouse's loss of consortium action).

We therefore affirm the trial court.

DICKSON, SULLIVAN, SELBY, and BOEHM, JJ., concur.